IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JIMMIE MARSHALL,**

       **Plaintiff,**

**v.**                                          **CIV No. 99-1363 LH/LCS**

**COLUMBIA LEA REGIONAL HOSPITAL,**
**NURSE JANE DOE, CITY OF HOBBS,**
**CAPTAIN TONY KNOTT,**
**SARGEANT WALTER ROYE, and**
**OFFICER RODNEY PORTER,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion of the City of Hobbs, Tony Knott, Walter Roye and Rodney Porter[1] for Summary Judgment (Docket No. 86). The Court, having considered the motion and briefs of the parties as well as applicable case law, for the reasons that follow, concludes that the motion shall be **granted.** Specifically, the federal claims over which this Court has original jurisdiction are dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and those are dismissed without prejudice.

---

[1] These defendants will be collectively referred to herein as the "Government Defendants" or simply as "Defendants."

**I. Procedural Background**

Plaintiff's claims are those that remained intact in the First Amended Complaint, filed on August 24, 2000 (Docket No. 27), following this Court's prior rulings. In its Memorandum Opinion and Order (Docket No. 23), this Court dismissed Plaintiff's claims under the fifth and fourteenth amendments, except for those involving equal protection violations.[2] In essence, Plaintiff's remaining claims are for violations of his fourth amendment rights, based on the allegations that he was illegally detained, seized, arrested, held, tested and wrongfully charged with crimes, because he is an African American male. He has sued police chief Tony Knott in his supervisory capacity and has raised claims of municipal liability against the City of Hobbs. Finally, he asserts state law claims of battery and negligence per se.

In the current motion, the Government Defendants seek to dismiss Plaintiff's fourth amendment claims, his equal protection claims, and the claims for supervisory and municipal liability.

**II. Applicable Legal Standards**

When a party submits a motion for summary judgment, it shall be granted if

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(c).

---

[2] In its June 19, 2001 Memorandum Opinion and Order (Docket No. 61), this Court struck Count III (fourteenth amendment substantive due process claim), but concluded all other counts, including those brought under state law, would remain. On February 7, 2002, Magistrate Judge Smith denied a motion to extend the motion deadline, concluded that Plaintiff's second motion to amend the complaint was untimely, and denied Plaintiff the right to amend his complaint a second time (Doc. No. 114). Plaintiff made no objection to this ruling.

The movants, in this case the Government Defendants, bear an initial burden of production. They must make a *prima facie* showing of entitlement to summary judgment, by establishing that there is an absence of any dispute of material fact, and that they are entitled to judgment as a matter of law. Notably, if the nonmovant bears the burden of persuasion at trial, which is true in the present case, the movants may meet their initial burden of production by simply demonstrating that a critical element of the nonmovant's case lacks support in the record. *Celotex Corp. v. Catrett*, 477 US 317, 323-325 (1986).

The *prima facie* case cannot be established with reference to conclusory statements or unsupported factual allegations. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998). Rather, the movants must illustrate that the facts as presented are seamless, without any "unexplained gaps". *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Once this preliminary step has been satisfied, the burden shifts to the nonmovant, who must "set forth specific facts showing that there is a genuine issue for trial". FED R. CIV.P. 56(e).

If the movants fail to shoulder their initial burden of production, however, the process comes to a halt. Significantly, this is true even when the nonmovant has provided no response or an inadequate response. *Anchorage Ass. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) A summary judgment proceeding simply cannot continue if the movants have failed to utilize the record and supporting documents to persuade the Court that an absence of evidence exists.

In the following analysis, the Court will initially determine whether or not the Government Defendants have met their *prima facie* burden of production. The Court notes that Plaintiff has

utterly failed to comply with the local and federal rules.[3]  Rather than simply grant Defendants'
motion however, or deem Defendants' statement of facts admitted, as the Court could do in its
discretion, the Court deems it more equitable to evaluate the merits of Defendants' proof as to each
claim challenged by them.  Furthermore, as indicated throughout this Memorandum Opinion, the
Court has evaluated the merits of Plaintiff's only factually supported submission (filed on January 3,
2002), and determined that it is ineffective to dispute the material facts established by Defendants.

### III.  Fourth Amendment Claims

#### A.  Traffic Stop

A traffic stop constitutes a reasonable "seizure" if an officer has probable cause to believe that a traffic violation has occurred.  *Whren v. United States*, 517 U.S. 806, 810 (1996).  Defendants have presented evidence that Officer Porter's decision to stop Mr. Marshall was based on an observed, though unspecified, traffic violation ("I observed a gold Toyota pickup driven by Jimmie Marshall commit a traffic violation"). (Defts' Ex. 1, Porter's Aff., ¶ 2).  This reference to a perceived violation, albeit vague, provides sufficient grounds to support the initial stop.  Moreover, the facts are

---

[3] Specifically, Plaintiff did not timely file his response to the motion, as required by Local Rule 7.  This rule states that a response is due within fourteen (14) calendar days after service of the motion.  D.N.M.LR-CIV.7.6(a).  In this instance, Defendants' motion was mailed on November 30, 2001 and Plaintiff's response was not filed until December 27, 2001, which was 13 days late.  Local Rule 7.5(b) provides that failure to serve or file a response in opposition to any motion constitutes consent to grant the motion.  Plaintiff's first response (Doc. No. 88) was one and one-half pages, factually disputed nothing in Defendants' motion, and contained only conclusory statements.  Plaintiff filed a second response to this motion, also on December 27, 2001.  This response was deficient in many respects, including but not limited to the fact that it did not set forth specific facts, as provided in Rule 56, showing that there was a genuine issue for trial.  FED.R.CIV.P.56(e).  It did not dispute Defendants' asserted facts in the manner mandated by D.N.M.LR-CIV. 56.1(b)(which provides that  "[A]ll material facts set forth in the statement of the Movant will be deemed admitted unless specifically controverted.").  On December 28, 2001, Defendants filed their reply brief.  On January 3, 2002, Plaintiff filed yet another memorandum, which in essence was a surreply, filed without permission of the Court, as required by D.N.M.LR-CIV. 7.6(b).  This was Plaintiff's only submission that set forth specific facts, supported by exhibits.

undisputed that after Officer Porter activated his emergency lights, Mr. Marshall continued to drive and did not pull over until he had reached his neighborhood, approximately two miles away. (Defts' Ex. 1, Porter's Aff., ¶ 2; Defts' Ex. 2, Marshall's Depo., pp. 58-59). This ultimately provides solid grounds to cite Mr. Marshall for resisting or evading an officer, a misdemeanor offense. *See* §30-22-1 N.M. STAT. ANN. (MICHIE1978). I therefore hold that Defendants have met their burden with respect to the Plaintiff's fourth amendment claim of unreasonable seizure, and that Plaintiff has not factually disputed Defendants' evidence. The traffic stop was justified and was supported by probable cause. With respect to the traffic stop portion of Defendant's motion for summary judgment, the motion will be granted, and Plaintiff's claim for an illegal stop under the fourth amendment will be dismissed.

### B. Arrest

Probable cause for an arrest exists when "the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed". *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985). Following the initial traffic stop, the only potential grounds Defendants have established for Mr. Marshall's arrest are based on (1) the odor of alcohol on his person (indicating a violation of §66-8-102(B) N.M. STAT. ANN. (MICHIE 1978)); (2) the presence of a "green leafy substance" on the front seat of the vehicle (theoretically signaling a violation of §30-31-23(B)(1) N.M. STAT. ANN. (MICHIE 1978)), and; (3) the fact that he had resisted an officer by continuing to drive for two miles (contrary to §30-22-1 N.M. STAT. ANN. (MICHIE 1978)). (Defts' Ex. 1, Porter's Aff., ¶ 2).

5

It has long been established in this jurisdiction that the odor of alcohol on a driver, without further indication of intoxication, is insufficient to establish probable cause for an arrest under §66-8-102(B) N.M.STAT. ANN. (MICHIE 1978). *State v. Sisneros*, 42 N.M. 500, 509 (1938); *Sellers v. Skarda*, 71 N.M. 383 (1963); *State v. Rivera*, 115 N.M. 424 (Ct. App. 1993). Consequently, the fact that Officer Porter detected an odor of alcohol on Mr. Marshall's person does not constitute probable cause to warrant an arrest.

The presence of the "green leafy substance" is also inadequate to establish probable cause. In *Texas v. Brown*, 460 U.S. 730 (1983), the Supreme Court held that an officer need not "know" the identity of contraband in order to seize it. Instead, it must be "immediately apparent" to the officer that he has incriminating evidence before him. However, in *Texas v. Brown*, the officer had made sworn statements regarding his suspicion of the item in question and his belief at the time that it was illegal. *Id*. In contrast, there is no indication from Officer Porter's affidavit that he believed the substance was an illegal drug, or even that he suspected, based on past experience, that the green leafy substance was marijuana. (Defts' Ex. 1, Porter's Aff., ¶ 2). Merely stating its description and location in the vehicle does not lead to the logical inference that the substance was illegal. As such, there is a lack of factual basis as to the probability that the substance was illegal. In summary, Defendants have failed to factually establish that there was probable cause to arrest Mr. Marshall for possession of contraband or driving while intoxicated.

The only remaining ground for arrest would be the fact that Mr. Marshall initially evaded the officer when he failed to pull over after noticing the emergency lights. This conduct violated §30-22-1 N.M. STAT.ANN. (MICHIE 1978). In New Mexico, an officer may make a warrantless arrest for offenses other than trivial misdemeanors when he has probable cause to believe that an offense is

being committed in his presence. Such probable cause exists when there is a reasonable foundation for the judgment of the officer that a misdemeanor is being committed. 1961-62 Op. Att'y Gen. No. 61-117. Under §3-13-2(A)(4)(d) N.M. STAT. ANN. (MICHIE 1978), police officers shall "apprehend any person in the act of violating the laws of the state or the ordinances of the municipality". In *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the Supreme Court recently affirmed the decision of a police officer to arrest a driver who failed to buckle a child into a safety belt. In so doing, the Court stated: "[I]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender". *Id*. at 354. I conclude Defendants have established that Officer Porter's arrest of Mr. Marshall for evasion of an officer was supported by probable cause and that Plaintiff has not factually disputed Defendants' evidence. This arrest did not violate the fourth amendment. With respect to the arrest portion of Defendants' motion for summary judgment, the motion will be granted and Plaintiff's claim for an illegal arrest under the fourth amendment will be dismissed.

**C. Blood Test**

In *Schmerber* the Supreme Court examined the issue of whether the police were justified in requiring a defendant to submit to a blood test, despite his refusal to consent, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness. *Schmerber v. State of California*, 384 U.S. 757, 768 (1966). In that case the Court concluded that there was probable cause for the officer to arrest defendant and charge him with driving an automobile while under the influence. Noting that "the mere fact of a lawful arrest does not end [its] inquiry", the Court went on to examine whether there were factors that allowed the

7

officer to forego the usual warrant requirement. In that case, the Court concluded that the officer might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant under the circumstances threatened destruction of the evidence. Under these circumstances, the Court concluded that the attempt to secure evidence of blood-alcohol content was an appropriate incident to defendant's arrest. The Court also concluded that the record indicated that the test was performed in a reasonable manner, by a physician in a hospital environment according to accepted medical practices. Based on these factors, the Court concluded that the record reflected no violation of defendant's right to be free of unreasonable searches and seizures.

I have considered all evidence presented by Defendants as to whether or not the blood test of Mr. Marshall violated his fourth amendment rights. First of all I must consider whether Defendants have established that probable cause existed to justify giving Mr. Marshall a blood test.

Officer Porter's affidavit, at page 2, states the following:

> Mr. Marshall was arrested and transported to the Hobbs city jail. I had Mr. Marshall perform sobriety tests. I used the horizontal gaze nystagmus and observed that his eyes did not pursue smoothly and had nystagmus at maximum deviation (indicating Mr. Marshall was under the influence of a drug or alcohol). I asked Mr. Marshall to say the ABCs and he had to stop twice and forgot letters. I asked him to perform the finger count and he could not coordinate his fingers and numbers. I told him he was under arrest for driving while under the influence of intoxicating liquor or drugs and read him the implied consent law.

Mr. Marshall's deposition testimony, produced by Defendants stated:

> I started my ABCs. I got probably halfway through them, I paused and I started all over my ABCs. I don't say my ABCs everyday. Okay. And like — but I did say my ABCs for him. And then he said, 'Well, you're drunk.' I said, 'No, I'm not drunk.'

(Marshall Depo. at p. 45). At page 76 of his deposition, Mr. Marshall stated that he remembered

Officer Porter doing something with his eyes, at the same time he did the ABCs.[4]

Secondly, I must consider Defendants' evidence on the issue of whether the blood test was performed in a reasonable manner. Officer Porter testified that he transported Mr. Marshall to Columbia Lea Regional Hospital where a sample of his blood was taken by nurse Iris Goad. (Porter Aff., p. 2). He stated that Mr. Marshall was "not physically forced to provide a blood sample" and that the sample was sealed and sent to a lab with instructions that it be tested for both alcohol and drugs. (*Id*). Mr. Marshall testified that he told the nurse, "[Y]ou don't have my consent, oral or written, to give me a blood test, but I'm not going to refuse it." (Marshall Depo. at p. 47). Nurse Goad testified as to the typical procedure for withdrawing blood from someone in police custody. (Goad Depo., pp.6-7). Although Nurse Goad has no independent recollection of taking Mr. Marshall's blood, she signed a form indicating that she witnessed the blood draw and that she drew the blood. (*Id*. at p. 9).

The withdrawal of Mr. Marshall's blood was taken under circumstances very analogous to those in *Schmerber*. Although he was initially legally arrested for resisting or evading an officer, as discussed above, his inability to perform field sobriety tests at the jail provided further evidence that other criminal activity had occurred, i.e., that he had been operating a motor vehicle under the influence of alcohol and/or drugs. Although he passed the breathalizer test, this did not rule out the presence of other drugs in his bloodstream. At this juncture, I conclude that probable cause to perform a blood test on Mr. Marshall existed. The facts supporting this probable cause indicated the

---

[4] In his deposition and affidavit, Mr. Marshall, by way of blanket denials, disputes that he failed these field sobriety tests. Such blanket denials are insufficient to defeat summary judgment. Furthermore, his statement that he passed the "ABC" test is disputed by his own description of his performance of the test. In his affidavit he stated that Officer Porter never looked at his eyes or used a flashlight on his eyes, yet in his deposition testimony he stated that he remembered Officer Porter doing something with his eyes.

required relevance and likely success of a test of Mr. Marshall's blood for drugs. As in *Schmerber*, the delay necessary to obtain a warrant under the circumstances threatened destruction of the evidence. This factor leads to the conclusion that the attempt to secure evidence of drugs in Mr. Marshall's blood, was an appropriate incident to defendant's arrest. Finally, I conclude that the record indicates that the test was performed in a reasonable manner, by a nurse in a hospital environment. There is nothing in the record to indicate that it was not done according to accepted medical practices. Based on these factors, the Court concludes that Defendants have established that there was no violation of defendant's right to be free of unreasonable searches and seizures. As discussed above, Plaintiff has produced no evidence that effectively disputes the evidence produced by Defendants on this issue.

The Court is cognizant of § 66-8-111 N.M.STAT.ANN. 1978 (MICHIE 1998), which states that if a person under arrest for an offense under the Motor Vehicle Code refuses upon request to submit to chemical tests, none shall be administered except upon issuance of a warrant. This Court is also cognizant that the administration of this blood test may have violated this statute. This potential statutory violation is not one of constitutional dimension however. A violation of state law cannot give rise to a claim under Section 1983. *See Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988). Such a violation may be relevant to Count V (battery), and Count VI (negligence per se) however. As provided below, this Court is dismissing all constitutional claims over which it has original jurisdiction. The Court declines to exercise its supplemental jurisdiction over Counts V and VI and will dismiss these two counts without prejudice.

## IV. Equal Protection Claim

Mr. Marshall's complaint alleges that Defendants' misconduct was racially motivated and that he was denied equal protection of the law because of his race. (First. Am. Compl., Count IV) The Equal Protection Clause requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

As stated above, the Court has concluded that the traffic stop, the arrest, and the blood test were all based upon probable cause, according to objective legal standards. In other words, the Court has concluded that all three of these government actions were based upon Mr. Marshall's conduct rather than his race. There is nothing in the record before the Court to indicate differential treatment of Mr. Marshall.[5]

## V. Supervisory/Municipal Liability

Counts VII and VIII seek redress for constitutional violations committed by Chief Knott in his supervisory capacity and against the City of Hobbs in its municipal capacity. This Court has concluded that all constitutional claims shall be dismissed. Accordingly, these two counts, premised upon the occurrence of such violations, must be dismissed as well.

**WHEREFORE**, for the reasons stated above, the Motion of the City of Hobbs, Tony Knott, Walter Roye and Rodney Porter for Summary Judgment (Docket No. 86) is **granted.** Specifically,

---

[5] In his affidavit, Mr. Marshall testified that Officer Porter stated, while searching his truck, "[Y]ou niggers never learn." As despicable a remark as this is, it is not sufficient to negate the probable cause that Defendants have established for the traffic stop, arrest and blood test. It does not provide proof that Mr. Marshall was treated differently from similarly situated people.

11

these Counts are dismissed insofar as the Government Defendants are concerned: Count I (fourth amendment unreasonable search); Count II (fourth amendment unreasonable seizure); Count IV (equal protection), Count VII (supervisory liability) and Count VIII (municipal liability). As stated above, Count III (fourteenth amendment substantive due process) was dismissed by earlier order of this Court. The two remaining counts, Count V (battery) and Count VI (negligence per se) are state law claims. As noted above, the Court declines to exercise supplemental jurisdiction over these two claims, and they are hereby dismissed without prejudice.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**