## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JIMMIE MARSHALL,

      **Plaintiff,**

v.                                                     **CIV No. 99-1363 LH/LCS**

COLUMBIA LEA REGIONAL HOSPITAL,
NURSE JANE DOE, CITY OF HOBBS,
CAPTAIN TONY KNOTT,
SARGEANT WALTER ROYE, and
OFFICER RODNEY PORTER,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court for consideration of Defendants' First Motion in

Limine (Docket No. 98) and for a reconsideration of the Hobbs Defendants' motion for summary

judgment, as ordered in the Tenth Circuit opinion in this case, *Marshall v. Columbia Lea Regional*

*Hospital*, 345 F.3d 1157 (10th Cir. 2003).  The Court, having followed the instructions of the Tenth

Circuit in this regard, and having reviewed all relevant motions, briefs and caselaw, concludes that

some of the Midland documents at issue shall be admitted and considered for purposes of the

Court's summary judgment analysis. Further, the Court concludes that these documents, considered

with the other facts of record pertaining to the events of December 26, 1996, are sufficient to create

a triable issue on Plaintiff's claim of racially selective law enforcement and that Defendants' motion

for summary judgment must be denied. Finally, the Court concludes that Defendants' First Motion in Limine (Docket No. 98) shall be taken under advisement and discussed at the pretrial conference scheduled for August 10, 2004.

**Procedural History**

This Court granted summary judgment for Defendants, and Plaintiff appealed the judgment. The Tenth Circuit analyzed Plaintiff's equal protection claim as being one that he was subjected to a racially discriminatory stop and arrest, and concluded that the record contained evidence, albeit disputed, that: (1) Plaintiff did not commit the traffic violation for which he was initially stopped; (2) that Officer Porter ascertained Plaintiff's race before initiating the stop; (3) that Officer Porter made repeated accusations that Plaintiff was on crack with no apparent basis; (4) that Officer Porter made an apparently unnecessary note of Plaintiff's race; and, (5) that Officer Porter's account of the events changed dramatically between the date of the incident and the date of his affidavit. *Id*. at 1170.

Based on this quantum of evidence the Tenth Circuit noted that it would be a "close question" as to whether or not the evidence would be sufficient to require the Hobbs Defendants to go to trial on the allegations of racial discrimination, concluding by saying, "But there is more." *Id*.

The Tenth Circuit proceeded to delineate evidence that Plaintiff presented, arising from Officer Porter's prior employment as a police officer in Midland, Texas. The Tenth Circuit quoted a memo that terminated Officer Porter's employment, in which the Midland police chief stated that Officer Porter had failed "to treat people fairly and equally under the law." The Tenth Circuit noted Plaintiff's contention that an analysis of Officer Porter's arrest records obtained from a Midland

investigation would establish a pattern of discrimination against blacks and Hispanics, and a *modus operandi* similar to that in Plaintiff's case. *Id*. at 1170-71. "If admissible, these documents, together with the other facts of record pertaining to the events of December 26, 1996, *may* be sufficient to create a triable issue on [Plaintiff's] claim of racially selective law enforcement." *Id*. at 1171 (*emphasis added*).

The Tenth Circuit declined to address the admissibility of the Midland investigation documents ("Midland documents"), indicating that this issue must be addressed on remand. *Id*. That Court instructed this Court to analyze these documents and then determine whether they "establish a 'pattern' of traffic stops and arrests that raises an inference of racial discrimination . . . or provide evidence that similarly situated individuals of a different race received differential treatment." *Id*. at 1171 (*citations omitted*). Following this discussion, the Tenth Circuit reversed the grant of summary judgment in favor of the Hobbs Defendants on the equal protection claim and remanded the case with instructions that this Court determine the admissibility of the Midland documents and reconsider the Hobbs Defendants' motion for summary judgment in light of the Tenth Circuit opinion. *Id*.

The Court notes that the Tenth Circuit did not decide whether or not summary judgment would have been appropriate, even without reliance on the Midland documents, but sidestepped the issue, noting that it would be a "close question." *Id*. at 1170. The Tenth Circuit noted the difficulty of this situation, stating that neither that Court nor the Supreme Court has "set forth the standards of proof needed for a plaintiff to withstand a motion for summary judgment in a case of an allegedly racially discriminatory stop and arrest by a single officer." *Id*. at 1166. The Tenth Circuit then proceeded to analogize the facts in this case to cases where defendants were singled out for

prosecution on the basis of race and were able to make a substantial threshold showing, *see Wade v. United States*, 504 U.S. 181, 186 (1992), or cases where "similarly situated individuals of a different race were not prosecuted." *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). Citing discriminatory traffic stop cases from other circuits, the Tenth Circuit indicated that it is a plaintiff's burden to demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose.[1]   Further, the Court noted that the discriminatory purpose need not be the only purpose, but that it must be a motivating factor in the decision.[2]

The Tenth Circuit has taken the unusual approach of directing this Court to determine the admissibility of the Midland documents, documents that were in the record before the Tenth Circuit, and then to reconsider its prior decision on summary judgment, which the Tenth Circuit reversed, in light of this enunciated framework.

## Admissibility and Effect of Midland Documents

Bearing in mind the Tenth Circuit's framing of this claim as one for racially selective law enforcement, the Court has re-examined the documents attached to Plaintiff's Corrected Memorandum in Support of Plaintiff's Response to Defendants' Motions for Summary Judgment (Docket No. 94).  Of these, Exhibit 3A is an affidavit from Chief of Police John A. Urby, swearing that the listed and attached records are true and correct copies of all personnel and internal affair documents, and that they were maintained as part of the regular business activities of the Midland

---

[1]  The Court cited *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001) and  *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533-36 (6th Cir. 2002).

[2]  The Court cited *Vallanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996) (*quoting Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).

4

Police Department.

Defendants' motion in limine that sought to exclude these documents was filed after completion of the summary judgment motion briefing and prior to the Court's entry of summary judgment. Defendants' primary argument against admission of these documents is that the Midland investigation revolved around alleged incidences where Officer Porter failed to store evidence in an evidence locker, and that this topic is irrelevant to the issues in this case. Defendants also argue undue prejudice from this evidence.

Plaintiff responded that these documents were much more comprehensive, covering other topics besides mishandling of evidence. In addition to this topic, Plaintiff counters that the Midland investigation produced documents concerning the "planting" of drugs on suspects, as well as fourth amendment and equal protection violations by Officer Porter, presumably for falsely targeting African-Americans for criminal drug prosecutions.

At this time, the Court will limit its review of the Midland documents, with the purpose of determining if any would be considered admissible and adequate under Rule 56 to support a finding that Defendants' motions for summary judgment should be denied, in light of the legal standards set forth in the Tenth Circuit opinion. The Court is cognizant that only admissible evidence may be considered by the Court under Rule 56.

The Midland documents include both the factual reports of the internal affairs investigation into Defendant Porter's conduct and official conclusions derived therefrom. The reports of the investigation, Exhibits 3F and 3G, are public records and reports, and are exceptions to the hearsay rule. FED. R. EVID. 803(8)(C). Exhibits 3C, 3D, 3E, and 3F express opinions or conclusions derived from the investigation. These documents, while not "factual findings resulting from an investigation

made pursuant to authority granted by law," *id.*, nonetheless fall within the same exception. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988).

Finding that these Midland documents fall within an exception to the hearsay rule does not end the Court's inquiry, however. The documents, as evidence of prior bad acts, are not admissible to show that Defendant Porter acted in conformity during the time period covered by this suit. FED. R. EVID. 404(b). As the Tenth Circuit pointed out, the Plaintiff will be required to prove at trial that Defendant Porter's actions had both a discriminatory effect and were motivated by a discriminatory purpose. *Marshall,* 345 F.3d at 1168. The Midland documents are therefore admissible on the issue of Officer Porter's motive, intent, or plan. FED. R. EVID. 404(b). They are not otherwise inadmissible, and will be considered for the purposes of summary judgment.

Having determined that these Midland documents shall be considered for summary judgment purposes, the Court notes that the Tenth Circuit characterizes these documents as "showing an extensive pattern of misconduct and violation of citizens' constitutional rights by Officer Porter when he was on the Midland force." *Id.* at 1162. This Court has carefully reviewed them in the light most favorable to the nonmoving party, Plaintiff, and drawing reasonable inferences in his favor, and agrees with this assessment. Coupled with evidence, outlined above, pertaining to the events of December 26, 1996, the Court concludes that there is a genuine issue of fact, creating a triable issue on Plaintiff's claim of racially selective law enforcement, insofar as Officer Porter is concerned.

The Midland documents are also relevant to the Plaintiff's claims of supervisory and municipal liability. *Id.* at 1177. In order to impute liability to Officer Porter's supervisors and the City of Hobbs pursuant to 42 U.S.C. § 1983, the Plaintiff must show that his damages resulted from

6

a municipal "policy" or "custom." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). An act that has such widespread practice as to carry the force of law constitutes a municipal "custom" for these purposes. *Id.* at 404.

In order to recover against a municipal employer for a hiring decision pursuant to 42 U.S.C. § 1983, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.' " *Id.* at 411.

The Court finds that the Plaintiff has demonstrated a triable issue of fact as to whether he has met this high standard. In light of the Midland investigation and the allegations of selective law enforcement based upon race, a jury could find that the Hobbs Defendants' decision to hire Defendant Porter was preceded by a failure to adequately scrutinize his background, amounting to "deliberate indifference," acts that could lead to a violation of the equal protection rights of African American residents of Hobbs. Because a genuine issue of material fact exists, the Defendants' motion for summary judgment on the Plaintiff's supervisory and municipal liability claims must be denied.


**State Law Claims**

The Tenth Circuit affirmed the grant of summary judgment to the Medical Defendants on the Plaintiff's federal claims, but remanded the state law claims for reconsideration. *Marshall*, 345 F.3d

7

at 1181.  The Plaintiff alleges that in subjecting or causing him to be subjected to a blood test over his express objection, Defendants Columbia Lea Regional Hospital and Nurse Iris Goad committed both battery and negligence *per se*.

"Only a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test.  No such physician, nurse, technician or technologist who withdraws blood from any person in the performance of a blood-alcohol test that has been directed by any police officer, or by any judicial or probation officer, shall be held liable in any civil or criminal action for assault, battery, false imprisonment or any conduct of any police officer, except for negligence...."  N.M. Stat. Ann. § 66-8-103 (2004).

Because Plaintiff's blood was drawn at the direction of a police officer, Plaintiff's battery claims are expressly barred by the statute.  The exception in the statute applies to claims for negligence in the performance of the blood test.  The Plaintiff's claim for negligence *per se* in conducting the test is based on the same allegations as his battery claim, namely that he was subjected to a blood test without his consent.  It would be absurd to permit a plaintiff to state a claim for one cause of action permitted by the applicable statute while finding that another, based on identical facts, is barred on the basis of public policy.  Neither the hospital nor the nurse was negligent in performing the blood test.  Both are therefore immune from liability for performing the test at the direction of Defendants Porter and Roye.

Alternatively, the Court finds that the Plaintiff has failed to allege facts necessary to support a claim for negligence *per se*.  The Plaintiff has alleged that conducting the blood test amounted to "an unconsented touching of his body."  The acts alleged in the Plaintiff's complaint were

intentional, and cannot support a negligence cause of action simply because it is the one permitted by the statute.  The Medical Defendants are entitled to judgment as a matter of law on the Plaintiff's state law claims, and their motion for summary judgment will be granted.

**WHEREFORE,** for the reasons stated herein, Plaintiff's Exhibits 3A and 3C-G have been considered for purposes of summary judgment, however admissibility at trial of these exhibits and a ruling on Defendants' First Motion in Limine (Docket No. 98) is taken under advisement until the Court hears arguments at the pretrial conference on August 10, 2004;

**FURTHERMORE**, the Court having reconsidered the Hobbs Defendants' motion for summary judgment, concludes that it shall be **denied**.  Accordingly, this matter shall proceed to trial on the Plaintiff's claims for individual, municipal and supervisory liability for selective law enforcement under the equal protection clause and for the warrantless blood test under the fourth amendment.

**FURTHERMORE**, for the reasons stated herein, the claims against the Hospital Defendants for battery and negligence *per se* shall be dismissed;

**IT IS SO ORDERED**.

_____

**SENIOR UNITED STATES DISTRICT JUDGE**