IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMIE MARSHALL,

       Plaintiff,

vs.                   `               CIV No. 99-1363 LH/LCS

WALTER ROYE  and RODNEY
PORTER,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on two post-trial motions that raise the defense of qualified immunity:  Defendant Porter and Roye's Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50(b)(1)(c) Based Upon the Doctrine of Qualified Immunity (Docket No. 227), and Defendant Porter's Post Trial Motion for Judgment as a Matter of Law Pursuant to Rule 50(b)(1)(c) Based Upon the Doctrine of Qualified Immunity for Rodney Porter (Docket No. 229). The Court, having considered these motions and the briefs submitted by the parties, the applicable law, and otherwise being fully advised, concludes that the motions are not well taken and shall be **denied**.

## Procedural Background

Qualified immunity is a recognized legal doctrine that protects government officers from

1

having to defend themselves from baseless lawsuits. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). Qualified immunity may be raised as a defense to liability at any stage in the litigation, *Alvarado v. Picur*, 859 F.2d 448, 451 n.3 (7th Cir. 1988), including as late as when seeking a judgment notwithstanding the verdict. *Krause v. Bennett*, 887 F.2d 362, 368 n.3 (2d Cir. 1989). Defendants filed a motion for summary judgment on qualified immunity grounds prior to the appeal in this matter. Because this Court dismissed the case on other grounds, it did not reach a decision on the qualified immunity motion at that juncture. On appeal, the Tenth Circuit did not address the qualified immunity issue as to these Defendants. Instead it reversed the grant of summary judgment in favor of the Hobbs Defendants on the equal protection claim and on the Fourth Amendment claim arising from the warrantless blood test, remanding the case.[1] *See Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1180 (10th Cir. 2003). In its opinion, the Tenth Circuit specifically held that there was a genuine issue of material fact regarding whether Mr. Marshall consented to the search. *Id*. at 1177.

Following a trial on the merits, the jury's special verdict found Defendants Porter and Roye liable for a Fourth Amendment violation, and concluded there was no equal protection violation. The jury specifically found that the blood test had been given to Mr. Marshall against his will, that is, without his consent. Defendants now again raise qualified immunity in the context of a motion for judgment as a matter of law pursuant to FED.R.CIV.P. 50(b). It is permissible for a defendant to reassert the qualified immunity defense after trial, after the factual disputes have been resolved. *See Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991)(holding unsuccessful attempt

---

[1]Although not relevant to issues now before this Court, the Tenth Circuit also reversed and remanded related supervisory and municipal liability claims and state law claims.

to prove qualified immunity before trial does not preclude reassertion at or after trial), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001).  *See also Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991).

### Discussion of Defendants' Joint Motion (Docket No. 227)

Pursuant to the qualified immunity defense, Defendants seek dismissal of the Fourth Amendment violation claim.  The qualified immunity doctrine protects public officials performing discretionary functions unless their conduct violates " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992) (*quoting Harlow v. Firzgerald*, 457 U.S. 800, 818 (1982)).

In *Siegert v. Gilley,* 500 U.S. 226, 233-34 (1991), the Supreme Court indicated that when qualified immunity is raised, the initial inquiry must be whether a constitutional right would have been violated on the facts alleged.  This inquiry has now been answered.  The jury's special verdict specifically stated that both Defendants violated Plaintiff's fourth amendment rights by forcing him against his will to produce a blood sample.  (Docket No. 205).

Assuming a violation, the next sequential step is to determine whether the right was clearly established.  This step is the focus of Defendants' joint motion.  They argue that qualified immunity shields them from liability because this constitutional right was not "clearly established" at the time that the blood test was administered to Mr. Marshall.  More specifically, they argue that the law pertaining to the Fourth Amendment violation, as analyzed and formulated in the Tenth Circuit's 2003 decision, was not clearly established at the time of the 1996 blood test.

Contrary to this argument, a careful analysis of the Tenth Circuit's opinion indicates that the

Tenth Circuit concluded that the law was clearly established in 1996 that, in light of the specific facts of this case, in the absence of consent from Mr. Marshall, his blood could not have been legally taken. In reaching this conclusion, the Tenth Circuit discussed the state of the law in New Mexico at the time of this occurrence. *Marshall,* 345 F.3d at 1172. In its opinion, the Tenth Circuit assumed that Mr. Marshall's mixed performance on the field sobriety tests provided probable cause for the blood test. *Id.* The Court then proceeded to examine the "harder question," which was whether there were exigent circumstances, considered in light of the purposes of the exigent circumstances doctrine. *Id.*

Exigent circumstances exist when a delay necessary to obtain a warrant creates an "emergency", which then justifies a warrantless search. The Tenth Circuit noted that "the rationale for the exigent circumstances doctrine is to avoid the loss of evidence due to the time required for obtaining a warrant -- not to enable police to obtain evidence in cases of alleged violations too trivial to support a warrant." *Id.* at 1174.

The Tenth Circuit then concluded that, under applicable New Mexico law, the alleged violations in this case were too trivial to support a warrant.[2]   "New Mexico's statutes clearly signal the State's limited interest in coerced testing of the blood of a motorist charged with a petty misdemeanor." *Id.* at 1176. Taking this reasoning one step farther, the Tenth Circuit concluded that if no warrant could be obtained, the issue of whether or not exigent circumstances existed is

---

[2] In reaching this conclusion, the Tenth Circuit relied upon N.M. STAT. ANN. § 66-8-111(A)(Michie 1998). The Tenth Circuit noted that this statute had been slightly modified since the time of Mr. Marshall's arrest, but that the changes were irrelevant to the issue raised in this case. *Id.* at 1173. The Court noted that the purpose of referring to state law was not to answer the question of reasonableness of the search, which must be determined by Federal law, but to determine whether or not the exigent circumstances recognized in *Schmerber v. California*, 384 U.S. 757 (1966) are present in this case. *Marshall*, 345 F.3d at 1175.

meaningless, stating that state actors in such circumstances cannot be granted shelter under the exigent circumstances exception to the Fourth Amendment's warrant requirement. *Id.*

This Court has carefully reviewed the Tenth Circuit opinion and construes it to mean that, as of the time of this incident, the law was clearly established that under the circumstances of this case, a blood test could only have been lawfully administered if Mr. Marshall consented to such a test. The Tenth Circuit held that whether or not Mr. Marshall consented to the search was a genuine issue of material fact, remanding this question to this Court for further factfinding. *Id.* at 1177. As noted above, at trial, the jury made the factual finding that Defendants Porter and Roye violated Mr. Marshall's Fourth Amendment rights by forcing him against his will to produce a blood sample (Special Verdict Answers to Question Nos. 7 and 13). (Docket No. 205).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). If an officer's conduct violated a right, as the jury has found in this case, it becomes incumbent for the Court to analyze the objective reasonableness of the officer's belief in the lawfulness of his actions. As noted by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 181-19 (1982), when the law is clearly established, the immunity defense ordinarily fails, because "a reasonably competent public official should know the law governing his conduct."

The Tenth Circuit's opinion explains the status of the applicable law at the time of this incident.[3] In light of this applicable law, it should have been clear to these officers that their conduct

---

[3] I reach this conclusion even in light of the fact that this Court originally granted summary judgment to Defendants on this issue. Like the Tenth Circuit, in my June 18, 2002 Memorandum Opinion and Order, I concluded there was probable cause to justify the blood test (Docket No. 128). The basis for my decision to grant summary

was unlawful in this case.  I conclude that even if these officers mistakenly thought what they did was proper, it was objectively unreasonable for them to think they could lawfully give this blood test in the absence of Mr. Marshall's consent, which the jury has concluded was not given.


**Individual Motion of Defendant Porter  (Docket No.  229)**

Defendant Porter's first argument is that he only had a passive role, merely standing by as Defendant Roye advised the nurse to "go ahead" and administer the blood test.  He argues that although he was present at the time the blood sample was taken, he neither directed nor took any actions to cause the blood sample to be taken.  As noted above, the factual inquiry involved in the qualified immunity analysis has been resolved by the jury:  the jury's special verdict specifically stated that both Defendants Roye and Porter violated Plaintiff's Fourth Amendment rights by forcing him against his will to produce a blood sample.  (Docket No. 205).  This factual finding that Defendant Porter "forced" Mr. Marshall to undergo a blood test flies in the face of Defendant Porter's argument that his active participation was nonexistent, once Defendant Roye arrived at the hospital.  The jury has resolved the factual question of his participation to the contrary,  and this Court will not substitute its judgment for the factfinding of the jury.  The jury has concluded that a constitutional violation occurred and that Defendant Porter's level of participation was sufficient to render him culpable.

---

judgment to Defendants was my conclusion that  while administration of the blood  test may have violated § 66-8-111 N.M.STAT.ANN.1978 (MICHIE 1998), such a violation would not be one of constitutional dimension, sufficient to give rise to a claim under Section 1983.  The Tenth Circuit's opinion also relied upon the fact that § 66-8-111 was violated, however found it relevant to the issue of exigent circumstances, as discussed herein in footnote 2.  The Tenth Circuit disagreed with this Court's conclusion that § 1983 would not apply to such a state law violation, however nothing  in either court's opinion contradicts the conclusion contained herein that the law was clearly established at the time the blood test was rendered in 1996.

Defendant Porter's other argument is that he was justified and was objectively reasonable in relying on the decision of his supervisor, Defendant Roye, to the effect that drawing Plaintiff Marshall's blood was legal, and therefore Defendant Porter is entitled to qualified immunity. In Defendant Porter's reply brief on page 2, it states that both defendants "testified that Sgt. Roye determined the law allowed for a blood test also, if the plaintiff would consent." This is an accurate statement of the law. The Court concludes from this statement that Defendant Porter is not arguing that he was reasonably mistaken as to what the law permitted under these circumstances. By his own admission, Defendant Porter knew that a blood test could only be administered if Mr. Marshall consented to it, and the jury has now found a lack of consent.

Defendant Porter argues that he was justified in relying on Defendant Roye's decision and determination that exigent circumstances existed, and that therefore, his actions were not objectively unreasonable. As explained above, as ruled by the Tenth Circuit, under the circumstances of this case, given the fact that no warrant could have been obtained due to the trivial nature of the charged offense, the issue of whether or not exigent circumstances existed is meaningless.

Finally, Defendant Porter argues that "Sergeant Roye read New Mexico's Implied Consent statute and determined that they could ask the Plaintiff for a sample of his blood." (Deft. Porter's Mem. at 6). Again, as noted by the Tenth Circuit, under the circumstances of this case, in the absence of consent from Plaintiff, his blood could not have been legally taken.

Reliance by Defendant Porter on Defendant Roye's judgment does not change the fact that the jury concluded that he forced Plaintiff against his will to give a blood test, and this cannot be considered reasonable conduct.

**WHEREFORE,** for the reasons stated, Defendant Porter and Roye's Renewed Motion for

Judgment as a Matter of Law Pursuant to Rule 50(b)(1)(c) Based Upon the Doctrine of Qualified Immunity (Docket No. 227), and Defendant Porter's Post Trial Motion for Judgment as a Matter of Law Pursuant to Rule 50(b)(1)(c) Based Upon the Doctrine of Qualified Immunity for Rodney Porter (Docket No. 229) shall be **denied**.

      **IT IS SO ORDERED.**

_____

**SENIOR UNITED STATES DISTRICT JUDGE**