IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMIE MARSHALL,

      Plaintiff,

vs.                                                                   No. CIV 99-1363 LH/LCS

COLUMBIA LEA REGIONAL HOSPITAL,
NURSE JANE DOE, CITY OF HOBBS,
CAPTAIN TONY KNOTT, SERGEANT
WALTER ROYE, and OFFICER RODNEY
PORTER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Judgment as a Matter of Law on the Issue of Compensatory Damages (Docket No. 223), Defendants' Motion for Remittitur or for a New Trial on the Issue of Compensatory Damages (Docket No. 221), Defendants' Motion for Judgment as a Matter of Law on the Issue of Punitive Damages (Docket No. 225), Defendants' Motion for Remittitur or for a New Trial on the Issue of Punitive Damages (Docket No. 257), Defendants' Motion for New Trial on Account the [sic] Admission of Unduly Prejudicial Evidence (Docket No. 218), and Defendants' Motion for a New Trial or to Dismiss the Plaintiff's Claims for Abuse of the Discovery Process (Docket No. 216). The Court, having considered the pleadings submitted by the parties, the applicable law, and otherwise being fully advised, finds that the motions are **not well taken** and should be **denied**.

I.  Background

Plaintiff went to trial on his claims under 42 U.S.C. § 1983, for alleged violations of his Fourth and Fourteenth Amendment rights by the police officers Porter and Roye, their supervisor Chief Tony Knott, and the City of Hobbs, N.M. The case was tried to a jury on August 16-23, 2004. The Court dismissed the supervisory and municipal liability claims. The jury returned a special verdict, finding Defendants Porter and Roye liable for a Fourth Amendment violation arising from an unlawful blood test and concluding there was no Equal Protection violation arising from Plaintiff's arrest. The jury awarded $90,000 in compensatory damages per officer, as well as $300,000 in punitive damages against Defendant Porter and $100,000 in punitive damages against Defendant Roye.

II.  Compensatory Damages

A.  Judgment as a Matter of Law

Defendants have moved for judgment as a matter of law on the issue of compensatory damages. They assert that Plaintiff was injured, if at all, due to the publicity of his arrest. Because the jury concluded that the arrest was lawful, Defendants argue there is no legally sufficient evidentiary basis for the award of compensatory damages.

1.  Legal Standard

In order for the Court to grant Defendants' motion and vacate the compensatory damages award, it must find that there is no legally sufficient evidentiary basis for a reasonable jury to have

awarded compensatory damages. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must view the evidence, and all justifiable inferences to be drawn therefrom, in the light most favorable to Plaintiff. *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...." *Id.*

2. Analysis

Defendants are correct that, because the jury found that Plaintiff's arrest did not violate his constitutional rights, he cannot recover compensatory damages caused by the arrest or the publicity of it. However, the jury did not find that Plaintiff had no compensable injury, only that his arrest was not unconstitutional. Special Verdict (Docket No. 205). In other words, the jury found that Plaintiff could not recover damages for injuries that stem from his arrest, not that he could not recover damages. The fallacy of Defendants' argument is that it wrongfully presumes that the jury awarded damages only for the humiliation caused by the publicity of Plaintiff's arrest, the damage to his reputation, and the resulting economic losses. There is nothing in the verdict to support this presumption.

In fact, the jury found that Defendants violated Plaintiff's Fourth Amendment rights by forcing him to produce a blood sample against his will. Special Verdict (Docket No. 205). It concluded, in response to Questions 9 and 15 on the Special Verdict form, that Plaintiff was entitled to $90,000 in compensatory damages from each officer for this Fourth Amendment violation. *Id.* "It is settled that damages may be awarded for nonpecuniary injury, such as psychological harm, where plaintiff has been deprived of his substantive constitutional rights." *Foster v. MCI Telecomm. Corp.*, 773 F.2d 1116, 1120 (10th Cir. 1985). The Court gave lengthy jury instructions on damages.

The jury was specifically instructed regarding the difficulty of measuring a constitutional violation in monetary terms, Jury Instruction No. 15 (Docket No. 203), that nominal damages are appropriate if a constitutional violation results in no compensatory damages, Jury Instruction No. 16 (Docket No. 203), and that it may only award those damages that will reasonably compensate Plaintiff for the injuries he suffered as a proximate result of Defendants' conduct, Jury Instruction No. 17 (Docket No. 203).

Because the jury found a constitutional violation, was properly instructed on proximate cause and damages, and then chose to award damages, the Court concludes that the damages were awarded for the violation of Plaintiff's Fourth Amendment rights. Having been properly instructed, it was the jury's prerogative to award damages to compensate Plaintiff for the injuries caused by the violation of his constitutional rights. It is clear from the jury's answers to specific questions on the verdict form that damages were awarded for the Fourth Amendment violation. Special Verdict (Docket No. 205).

This conclusion is bolstered by the fact that the jury awarded the same amount of compensatory damages, $90,000, against both Defendants Porter and Roye. Special Verdict (Docket No. 205). Defendant Roye did not participate in the traffic stop or arrest of Plaintiff. He was only involved in procuring the blood sample from Plaintiff, the only incident the jury found to violate Plaintiff's constitutional rights. *Id.* If, as Defendants now argue, the injuries for which Plaintiff was awarded compensatory damages arose from the stop and arrest, it is only logical to infer that the jury would not have awarded damages against Defendant Roye.[1] Having not only awarded damages

---

[1] Moreover, had the jury awarded damages based evidence that was unduly prejudicial, as Defendants argue in their motion for a new trial due to the admission of that evidence, there would have been no reason for an award of compensatory damages against Defendant Roye. The only inference to be drawn from the jury's verdict is that the

against both Defendants, but also equal amounts of damages, the only logical conclusion to be drawn is that the jury awarded damages for the violation of Plaintiff's Fourth Amendment rights.

Finally, Defendants argue that Plaintiff "did not offer any proof at trial that the blood test caused him any damages at all." Defs.' Mem. in Supp. of Mot. at 6. Again, this argument is based on the presumption that the damages awarded were for the economic losses caused by Plaintiff's arrest, a presumption that is unfounded. Defendants are correct that compensatory damages, other than nominal damages, are not available to compensate the violation of a constitutional right alone, without proof of actual damages. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). As noted above, they are also correct that economic damages resulting from publicity of Plaintiff's arrest, which the jury found was justified, are not recoverable. However, Defendants are incorrect in their assertion that the "record is completely void of any evidence that the blood taking was the proximate cause of any damage to the Plaintiff...." Defs.' Mem. in Supp. of Mot. at 5.

In fact, Plaintiff did offer proof of damages that the jury could have considered as having been caused by the illegal blood test. Plaintiff testified regarding his increased distrust of police officers, Tr. 382:15-21, which the jury could have considered as being caused by the blood test against his will as well as from being arrested. He testified about his mental anguish and emotional distress, Tr. 383:2-12, and there is no factual basis for attributing this only to the arrest and not to the involuntary blood draw. Indeed, it seems all but impossible to separate the two events from each other in terms of the psychological harm that resulted from each. Plaintiff suffered an invasion of the sanctity of his body at the hands of the very authorities sworn to protect the constitutional rights

---

compensatory damages were awarded for injuries that derived from the blood draw.

they violated. The jury heard evidence of the harm that resulted, and chose to award damages for the harm. A legally sufficient evidentiary basis existed for the award, and the Defendants' motion must be denied.

B. Remittitur or New Trial

Defendants have also moved for remittitur or, in the alternative, a new trial on the issue of compensatory damages. Defendants argue that the compensatory damages awards are excessive and so high as to shock the judicial conscience, and that they constitute a denial of justice.

1. Legal Standard

"In the usual remittitur situation, a trial judge reviews the jury's verdict in order to determine if substantial evidence at trial supported the amount awarded. If the court finds that insufficient evidence exists, or finds the amount of the verdict a product of jury passion or prejudice, the court then may determine a reasonable amount as plaintiff's damages and allow plaintiff to remit the excess over such amount. In the event plaintiff refuses to remit the excess, the court must then order a new trial on the damages issue." *O'Gilvie v. Int'l Playtex*, 821 F.2d 1438, 1448 (10th Cir. 1987) (internal citations omitted). The Defendants "bear the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence....[A]bsent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998) (internal quotation marks and citations omitted).

2. Analysis

While damages are available for violations of 42 U.S.C. § 1983 "to compensate persons for injuries caused by the deprivation of constitutional rights," *Carey*, 435 U.S. at 254, "[a] damages award must be based on actual injuries." *Id.* at 264. "[T]he abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986), *citing Carey*, 435 U.S. at 264. Nevertheless, "[i]t is settled that damages may be awarded for nonpecuniary injury, such as psychological harm, where plaintiff has been deprived of his substantive constitutional rights." *Foster*, 773 F.2d at 1120.

As noted above, Plaintiff testified about psychological harm and increased apprehension about police, which the jury must have concluded was caused by the illegal blood test, given its finding of no equal protection violation. The Tenth Circuit has recently affirmed substantial jury awards for psychological injury in civil rights cases. For example, in *Dodoo v. Seagate Tech., Inc.*, 235 F.3d 522 (10th Cir. 2000), the jury found the defendant had discriminated against the plaintiff on the basis of his age in violation of the ADEA and his race in violation of Title VII by failing to promote him. *Id.* at 525. The plaintiff in that case testified that he had trouble sleeping, and woke up with his heart pounding not knowing where he was. He testified about feeling it was too late to start over with another employer, and like Mr. Marshall, that he sought the counsel of others, to deal with his emotional distress. In addition to back pay and substantial punitive damages, the jury awarded $50,000 in compensatory damages for emotional distress on his ADEA claim and $75,000 in compensatory damages for emotional distress on his Title VII claim. *Id.* at 527. The Tenth Circuit affirmed the judgment, finding that the plaintiff's compensatory damages were justified by the

evidence, which, like this case, did not include the testimony of a doctor or mental health professional. *Id.* at 532.

In *Baty v. Willamette Indus.*, 172 F.3d 1232 (10th Cir. 1999), the jury awarded compensatory damages of $120,000 for psychological injury and punitive damages of $500,000 on the plaintiff's sexual harassment claim, and awarded compensatory damages of $25,000 and punitive damages of $500,000, in addition to back pay and front pay, on her retaliation claim. *Id.* at 1240. The district court reduced the separate awards to a single capped award of $300,000, based upon its interpretation of 42 U.S.C. § 1981a, *id.*, and the Court of Appeals affirmed that judgment. *Id.* at 1244.

In the Title VII case of *Smith v. Norwest Fin. Acceptance*, 129 F.3d 1408 (10th Cir. 1997), following a verdict from an advisory jury, the district court entered a judgment for the plaintiff for $270,000 in compensatory damages for emotional distress. The district court then reduced this award to $200,000, the statutory cap under 42 U.S.C. § 1981(a). *Id.* at 1411. The Court of Appeals affirmed the damages as reduced by the trial court, noting that the plaintiff's case did not include the testimony of a doctor or mental health professional, and that the plaintiff's testimony about her mental anguish was not particularly graphic or detailed. *Id.* at 1416.[2]

These cases demonstrate that the issue of the amount of damages caused by a particular harm is appropriately decided by a jury, properly instructed. "A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed." *Owen v. Independence*, 445 U.S. 622,

---

[2]The plaintiff testified about nausea, migraines, humiliation, degradation, loss of self-respect, sleeplessness, consumption of sleeping pills, stress, and frequent crying.

651 (1980). Given the nature of the constitutional violation at issue here, this Court cannot say that the amount of damages the jury chose to award is excessive. If a similar amount of damages is appropriate to remedy the psychological harm caused by sexual harassment or racial discrimination, it is certainly appropriate to remedy the psychological harm caused by a physical intrusion into the sanctity of one's person.

The Court does not find that the jury's award of compensatory damages is so high as to shock its conscience or raise the irresistible inference that it was based upon passion, prejudice, corruption, or some other improper motive. Defendants have failed to meet their "heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Blanke*, 152 F.3d at 1236. Plaintiff's testimony about emotional distress constitutes substantial evidence when considered in conjunction with the totality of circumstances surrounding his claims. The jury's determination of those facts is therefore "considered inviolate." *Id.* Defendants' motion is denied.

### III. Punitive Damages

A. Judgment as a Matter of Law

The jury awarded Plaintiff $300,000 in punitive damages against Defendant Porter and $100,000 against Defendant Roye. Defendants moved for judgment as a matter of law on the issue of punitive damages, arguing that there was an insufficient evidentiary basis for the awards.

1. Legal Standard

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been

fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000), *quoting* FED. R. CIV. P. 50(a)(1). In ruling on a Rule 50 motion, the Court must "review the record taken as a whole....In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 150-51 (internal quotation marks and citations omitted).

2. Analysis

"We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *Newport v. Fact Concerts*, 453 U.S. 247, 266-67 (1981).

Viewing the record as a whole and drawing all inferences in Plaintiff's favor, the Court finds that sufficient evidence existed to allow the jury to award punitive damages. The jury found that both Defendants violated Plaintiff's Fourth Amendment rights by forcing him against his will to produce a blood sample. Special Verdict (Docket No. 205). As discussed above, it was justified in doing so, as ample evidence supporting that conclusion was introduced. The jury was equally justified in finding that the constitutional violation was "motivated by evil motive or intent" or

involved "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. at 56.

Defendants' argument that they believed the search was lawful and justified is frivolous. Defendant Porter himself testified that he read Plaintiff the New Mexico Implied Consent Act, which states that if the person subject to the breath or blood test refuses to submit to the test, none can be administered. Tr. 117:24-118:2. Plaintiff testified that Defendants then nevertheless forced him to submit to a blood test against his will. Tr. 372:5-10. There was therefore a legally sufficient evidentiary basis for the jury to find that Defendants' violation of Plaintiff's Fourth Amendment rights was intentional and knowing.

Whereas compensatory damages are not available to compensate the value of a particular constitutional right that is violated, punitive damages are available to "punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *Newport*, 453 U.S. at 266. "By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights." *Carey*, 435 U.S. at 266.

The Court finds that a legally sufficient evidentiary basis existed for the jury to find that Defendants knowingly and intentionally violated Plaintiff's Fourth Amendment rights. Defendants' motion must therefore be denied.

B. Remittitur or New Trial

Defendants have also moved for remittitur or, in the alternative, a new trial on the issue of punitive damages. They argue that the awards were excessive and the result of passion and prejudice, that they were inconsistent and disproportionate, and that they were based on improper evidence.

1. Legal Standard

"In the usual remittitur situation, a trial judge reviews the jury's verdict in order to determine if substantial evidence at trial supported the amount awarded. If the court finds that insufficient evidence exists, or finds the amount of the verdict a product of jury passion or prejudice, the court then may determine a reasonable amount as plaintiff's damages and allow plaintiff to remit the excess over such amount. In the event plaintiff refuses to remit the excess, the court must then order a new trial on the damages issue." *O'Gilvie*, 821 F.2d at 1448 (internal citations omitted). The Defendants "bear the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence....[A]bsent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Blanke*, 152 F.3d at 1236 (internal quotation marks and citations omitted).

2. Analysis

Defendants first argue that the awards were excessive and the result of passion and prejudice, though they do not explain why they believe that is so. As discussed above, the Court finds that

-12-

sufficient evidence existed to support the punitive damages awards. By the same token, there is nothing to indicate that the awards were the product of passion or prejudice. Sufficient evidence to support the awards having been introduced, the Court presumes that the jury's verdict was based on that evidence.

Defendants also argue that the punitive damage awards are inconsistent, but do not explain why that is a reason for granting a remittitur or a new trial. The two Defendants played different roles in the incident. There is no reason to assume that the awards against each of them would be identical. Defendants argue that, in light of the evidence presented, the different awards indicate that the jury awarded punitive damages based on evidence of events other than the blood draw, the only event the jury found to violate Plaintiff's constitutional rights. Specifically, Defendants point to evidence of Defendant Porter's conduct while he was a police officer in Midland, Texas. Defendants argue that because the Court admitted unduly prejudicial evidence that cast Defendant Porter in a particularly bad light,[3] the greater punitive award against him demonstrates that the jury awarded punitive damages based upon this evidence and not for the constitutional violation.

Defendants' motion for a new trial on this ground will be discussed separately below. With regard to the punitive damages awards, Defendants' argument has no merit. There is nothing in the record to support the conclusion that the jury awarded three times the punitive damages against Defendant Porter that they awarded against Defendant Roye based on the "Midland evidence." That evidence primarily related to the equal protection claim, for which the jury found no liability for either Defendant.

---

[3]Defendants have also moved for a new trial on this ground. Defs.' Mot. for New Trial on Account of the Introduction of Unduly Prejudicial Evidence (Docket No. 218).

There is also nothing in the verdict to indicate that the jury based its award upon improper evidence, or upon any specific evidence. That Defendant Roye played a greater role in the blood draw is Defendants' interpretation of the evidence, by which this Court is not bound and with which the jury obviously did not agree. Again, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150-51. The Midland evidence was properly admitted, and the Court granted in part Defendants' motion *in limine* to exclude several pieces of evidence. Memorandum Opinion and Order (Docket No. 189), filed August 10, 2004.

Furthermore, Defendants stipulated to much of the Midland evidence, as well as to far more damaging evidence regarding Defendant Porter's activities. Clerk's Minutes (Docket No. 202) at 3; Tr. 128:10-24. For example, Defendants stipulated to the admission of several newspaper articles about the racial tensions between African American residents of Hobbs and the Hobbs police department, some of which referred to incidents in which Defendant Porter was involved. Clerk's Minutes (Docket No. 202) at 3; Tr. 128:10-24. The Court will not overturn the jury's verdict based on Defendants' speculation as to what that verdict was based upon, or substitute its own interpretation of the evidence for that of the jury.

Finally, the awards are not so high as to shock the judicial conscience. Defendants grossly understate the magnitude and mischaracterize the type of harm they inflicted on Plaintiff. As discussed previously, the jury found that Defendants used their governmental authority to coerce Plaintiff into submitting to a physical intrusion into his body. It is difficult to imagine a more egregious violation of one's constitutional rights. As such, the awards do not shock the Court's conscience. Defendants' motion will be denied.

## IV.  Unduly Prejudicial Evidence

Defendants have moved for a new trial on the ground that the Court admitted unduly prejudicial evidence. Defendants assert that the "Midland evidence," evidence of Defendant Porter's employment history with the Midland, Texas, police department, was "so inflammatory that it permeated the jurors' ability to be fair and impartial." Mem. in Supp. of Defs.' Mot. for New Trial (Docket No. 219).  Defendants argue that the "disproportionate" punitive damage awards demonstrate that the jury based its verdict in part on that evidence.

### A.  Legal Standard

"If error is found in the admission of evidence, we will set aside a jury verdict only if the error prejudicially affects a substantial right of a party.  Evidence admitted in error can only be prejudicial if it can be reasonably concluded that with or without such evidence, there would have been a contrary result." *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998) (internal quotation marks and citations omitted).

### B.  Analysis

"A party must make a timely and proper objection to preserve an alleged error for appeal. Failure to so object constitutes waiver of the issue unless there is plain error resulting in manifest injustice." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1113 (10th Cir. 2001) (internal quotation marks and citations omitted).  There was no error in admitting the Midland evidence, as the Court found in ruling on Defendants' motion *in limine*.  None of the arguments advanced by Defendants approach "manifest injustice."  *Id.*

-15-

Secondly, although Defendants moved *in limine* to exclude the evidence as noted above, they stipulated at trial to the admission of records of the arrests Defendant Porter made while employed by the Midland police department and of the internal affairs investigation into Defendant Porter's performance. Clerk's Minutes (Docket No. 202) at 3; Tr. 128:10-24. They also inexplicably stipulated to the admission of several newspaper articles about the racial tensions between African American residents of Hobbs and the Hobbs police department, some of which referred to incidents in which Defendant Porter was involved. Clerk's Minutes (Docket No. 202) at 3; Tr. 128:10-24. Defendants have thereby waived their objection to the admission of the evidence, and there is no "plain error resulting in manifest injustice." *Hampton*, 247 F.3d at 1113. Their motion will therefore be denied.

## V.  Discovery Abuses

Defendants have moved for a new trial or to dismiss Plaintiff's complaint for abuse of the discovery process. Defendants claim that Plaintiff willfully failed to supplement his discovery responses in an attempt to recover damages to which he was not entitled. Specifically, Defendants claim that Plaintiff's failure to supplement his discovery responses regarding his employment history, lost income, and impaired earning capacity allowed him to recover a greater award than that to which he was entitled.

### A.  Legal Standard

"Rule 37(b)(2)(C) of the Federal Rules of Civil procedure permits a court to issue 'an order ...dismissing the action'...'if a party...fails to obey an order to provide or permit discovery.'

Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992), *quoting* FED. R. CIV. P. 37(b)(2)(C). However, "dismissal represents an extreme sanction appropriate only in cases of willful misconduct." *Id.*

> Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.

*Id.* (internal quotation marks and citations omitted).

B.  Analysis

In this case, the Court finds that the first factor alone precludes granting Defendants' motion. There has been no actual prejudice to Defendants. The jury found that Plaintiff's arrest was justified and did not violate his constitutional rights. Special Verdict (Docket No. 205). The evidence showed that the economic damages from loss of work as well as any damages for harm to Plaintiff's reputation were proximately caused by the publicity of Plaintiff's arrest. Had Plaintiff recovered lost wages, proximately caused by an event that did not violate his rights, Defendants' arguments here and in their motion for judgment as a matter of law on the issue of compensatory damages would likely be well taken. However, there is no factual basis for a conclusion that Plaintiff was awarded damages for lost income. Failing to indicate that he was presently employed, ostensibly to prevent the jury from offsetting his economic damages with income he was earning, had no effect on the damages Plaintiff recovered. Any failure on Plaintiff's part to supplement his discovery responses

was therefore harmless, resulting in no actual prejudice to Defendants.

The second factor is "the amount of interference with the judicial process." *Ehrenhaus*, 965 F.2d at 920. To be sure, every violation of the Rules of Civil Procedure interferes with the judicial process and the administration of justice. However, Defendants' arguments grossly overstate the degree to which the Plaintiff's failure to supplement his discovery responses affected the trial. The Court is not convinced that Plaintiff intentionally misled or concealed information from the Court or Defendants. As discussed above, Plaintiff did not benefit from his violations. Moreover, contrary to Defendants' argument, Plaintiff did testify at trial that he was employed at that time in a capacity other than as a self-employed electrician.[4] Tr. 389:6-7. Defendants' counsel chose not to cross-examine him on the topic. Plaintiff's conduct did not interfere with the judicial process to an extent justifying dismissal of his claims or a new trial.

The third factor to consider is "the culpability of the litigant." *Ehrenhaus*, 965 F.2d at 920. This factor also weighs against dismissing Plaintiff's claims. Plaintiff responded to the discovery requests in question on Plaintiff on May 8, 2000. In the interim, Plaintiff terminated his attorney, won a reversal on his *pro se* appeal, hired a new attorney unfamiliar with the proceedings to that point, and went to trial more than four years later. Defendants also claim that Plaintiff's discovery violations somehow bear on his credibility as a witness. However, to reiterate, Plaintiff testified at trial that he was working at that time. Tr. 389:6-7. He revealed the information Defendants claim was the key to a successful impeachment, yet Defendants chose not to impeach him with it. While

---

[4]The Court assumes that the false statements of fact in Defendants' Memorandum Brief in Support of Motion for New Trial or to Dismiss Plaintiff's Claims for Abuse of Discovery Process and in the attached affidavit of Defendants' counsel to the effect that Defendants were not informed until after Plaintiff had testified that he was in fact working at the time of trial are due to their oversight and were not willfully made.

Plaintiff's failure to comply with the discovery rules should not be condoned, it is hardly the sort of willful violation that warrants dismissal or a new trial.

The fourth factor is "whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance." *Ehrenhaus*, 965 F.2d at 920. Defendants have not shown that Plaintiff himself was ever warned that dismissal was possible for a violation of the discovery rules. Given the fact that he represented himself on appeal and hired a new attorney for trial, the Court must find that this factor counsels against dismissing the complaint.

The fifth factor is "the efficacy of lesser sanctions." *Id.* The Court finds that lesser sanctions would better serve the purposes of the discovery rules as well as the interests of justice. Because the aggravating factors do not "outweigh the judicial system's strong predisposition to resolve cases on their merits," dismissal is an inappropriate sanction in this case. *Id.* For all these reasons, Defendants' motion is denied.

**WHEREFORE, IT IS HEREBY ORDERED** that the Defendants' Motion for Judgment as a Matter of Law on the Issue of Compensatory Damages (Docket No. 223) is **denied**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Remittitur or for a New Trial on the Issue of Compensatory Damages (Docket No. 221) is **denied**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Judgment as a Matter of Law on the Issue of Punitive Damages (Docket No. 225) is **denied**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Remittitur or for a New Trial on the Issue of Punitive Damages (Docket No. 257) is **denied**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for New Trial on Account the

[sic] Admission of Unduly Prejudicial Evidence (Docket No. 218) is **denied**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for a New Trial or to Dismiss the Plaintiff's Claims for Abuse of the Discovery Process (Docket No. 216) is **denied**.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**