## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JIMMIE MARSHALL,

      **Plaintiff,**

   **vs.**              `        `           CIV No. 99-1363 LH/LCS

WALTER ROYE  and RODNEY
PORTER,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Attorney Fees (Docket No. 231).  The Court, having considered the motions and briefs filed in support and in opposition thereto, as well as applicable case law, concludes that Plaintiff's Motion for Attorney Fees (Docket No. 231) is **granted**, however the amounts awarded herein differ from the amounts sought by Plaintiff for each of his four attorneys.  For the reasons stated herein, the Clerk's Cost Award (Docket No. 267) shall stand as entered in the amount of $1,943.43, and Defendants shall pay attorneys fees and applicable gross receipts taxes in the amount of $109,451.30.

## I.  Background

Plaintiff filed this suit in November of 1999 pursuant to 42 U.S.C. § 1983 as well as under some state law claims.  All of Plaintiff's claims were dismissed by summary judgment. Plaintiff filed and partially prevailed on a *pro se* appeal, wherein the Tenth Circuit affirmed summary judgement

as to Defendants Goad and Columbia Lea Regional Hospital, but reversed this Court's decision with regard to Defendants Porter, Roye, Knott and the City of Hobbs.

Plaintiff was represented by attorneys Robert Cates and Glen Houston, until their withdrawals from the case in February and August of 2002, respectively.  Upon remand from the Tenth Circuit, Plaintiff retained the law firm of Robert J. Gorence and Associates, P.C., to represent him.  That firm entered its appearance in this matter on January 6, 2004, and remains counsel of record.

Plaintiff's claims that his Fourth and Fourteenth Amendment rights were violated were tried to a jury on August 16-23, 2004.  The jury found Defendants Porter and Roye liable for a Fourth Amendment violation arising from an unlawful blood test and concluded there was no Equal Protection violation arising from Plaintiff's arrest.  The jury awarded $90,000 in compensatory damages per officer, as well as $300,000 in punitive damages against Defendant Porter and $100,000 in punitive damages against Defendant Roye, for a total damages award of $580,000.

A Clerk's Order Settling Costs was entered on December 3, 2004 (Docket No. 267), awarding costs to Plaintiff in the amount of $1,943.43.  Defendants have not sought review of this order by this Court, and accordingly it shall stand as written.  Last week the Court entered rulings on numerous, non-meritorious post-trial motions filed by Defendants.  Consequently, only the attorney fee issue remains  before the Court.

Plaintiff seeks the following fees:

| Name | Hours | Hourly Rate | Total |
|---|---|---|---|
| Robert J. Gorence, Attorney | 233.47 | $250.00 | $58,367.50 |

| | | | |
|---|---|---|---|
| Louren Oliveros, Attorney | 135.79 | $150.00 | $20,368.50 |
| Glen Houston, Attorney | unspecified | $250.00 | $77,373.00[1] |
| Robert Cates, Attorney | 140.9 | $150.00 | $21,135.00 |
| Michael Neil, Law Clerk | 21.00 | $75.00 | $1,575.00 |
| **TOTAL:**  (not including gross receipts tax) | | | **$178,819.00** |

Plaintiff will be awarded the following fees for the reasons set forth:

| **Name** | **Hours** | **Hourly Total Rate** | |
|---|---|---|---|
| Robert J. Gorence, Attorney | 218.35 | $250.00 | $54,587.50 |
| Louren Oliveros, Attorney | 123.52 | $150.00 | $18,528.00 |
| Glen Houston, Attorney | 50.00 | $150.00 | $7,500.00 |
| Robert Cates, Attorney | 135.60 | $150.00 | $20,340.00 |
| Michael Neil, Law Clerk | 21.00 | $75.00 | $1,575.00 |
| **Fee Total:** | | | **$102,530.50** |
| **Plus N.M. Gross Receipts Tax @ 6.75%** | | | **$6,920.80** |
| **GRAND TOTAL** | | | **$109,451.30** |

## II.  Discussion

### A. Prevailing Party Status

Several well-established principles guide my review of the claim for fees.  Congress has authorized federal courts to award "a reasonable attorney's fee" in certain civil rights cases, but only

---

[1] This figure, according to Mr. Houston's Attorney Fees Affidavit (Ex. E to Mem. in Supp. of Pltf's Mot. for Attys' Fees, Docket No. 232), is for attorney's *and* paralegal fees.

to the "prevailing party." 42 U.S.C. § 1988. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992). A monetary judgment alters the legal relationship of the parties, regardless of its amount, and renders the winner a prevailing party for purposes of fee shifting. *Id.* at 113. Plaintiff is the beneficiary of a monetary judgment; accordingly he is a prevailing party entitled to seek a fee award. Defendant has not suggested any special circumstances that would make such an award unjust. The *Ferrar* court noted that even a plaintiff who wins nominal damages is a "prevailing party" under § 1988. *Id.* Certainly, Plaintiff qualifies as a prevailing party in this case, given the substantial compensatory and punitive damages awarded to him for his Fourth Amendment claim. The fact that the jury found no liability under his Equal Protection claim does not affect the prevailing party inquiry.

   **B.  Lodestar Analysis**

   In determining a reasonable fee, the most useful starting point is to ascertain "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of this multiplication is called the lodestar. The lodestar provides an "objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* The district court may either accept the lodestar as the reasonable amount to award the prevailing part or it may adjust the lodestar upward or downward, depending on the circumstances of the case. *Id.* at 434. There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to accord for limited success. "The court necessarily has discretion in making the equitable judgment." *Id.* at 436-437.

### 1.  Hours Reasonably Expended

To determine the hours Plaintiff reasonably expended pursuing this action, the Court must examine the reasonableness of total time reported by counsel and the time allotted to specific tasks. *Ramos v. Lamm*, 713 F.2d 546, 553-554 (10th Cir. 1983), abrogated on other grounds by *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711 (1987).  "It does not follow that the amount of time actually expended is the amount of time reasonably expended." *Ramos*, 713 F.2d at 553, quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir. 1980).  In order to prove the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."  *Case v. Unified Sch. Dis. No. 233, Johnson County, KS*, 157 F.3d 1243, 1250 (10th Cir. 1998).  To satisfy this burden, "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  *Hensley*, 461 U.S. at 437 n.12.   The district court can reduce the number of hours when the time records provided to the court are inadequate.  *See Case*, 157 F.3d at 1250. Finally, the district court must reduce the actual number of hours expended to a reasonable number to ensure services an attorney would not properly bill to his or her client are not billed to the adverse party. *Id*.

### a.  Hours Reported by Robert J. Gorence

Mr. Gorence seeks compensation for 233.47 hours.  His firm entered an appearance in this matter approximately seven months before trial.  As justification for these hours, Mr. Gorence argues that Defendants vigorously contested Plaintiff's claims and that this case involved special

circumstances due to the withdrawal of Plaintiff's prior counsel. He argues that substantial factual investigation was necessary and that such investigation was more difficult and expensive because the incident occurred in Hobbs, which is where witnesses and prior counsel were located, Mr. Marshall was located in Ruidoso, and Mr. Gorence lived and worked in Albuquerque. Mr. Gorence argues that the review of the voluminous civil and criminal litigation involving the Hobbs Police Department and various Hobbs police officers, during the past ten years, was necessary and very time consuming.

Mr. Gorence provides an affidavit and detailed time sheets for time spent from January 2, 2004 through the time of trial. I conclude that these time sheets are sufficiently detailed to afford this Court a meaningful review of time spent.

### b. Hours Reported by Louren Oliveros

Ms. Oliveros's reported hours begin with a meeting with Plaintiff on January 3, 2004. They continue through trial and include research for post-trial motions, including this attorney fee issue. Ms. Oliveros also provides an affidavit and time sheets that are sufficiently detailed to afford this Court a meaningful review of time spent. Ms. Oliveros's time sheets total the 135.79 hours that she seeks in the motion.

### c. Hours Reported by Robert G. Cates

According to his affidavit, Mr. Cates consulted with and served as co-counsel of record on behalf of Plaintiff, from April 2000 to February 2002. (Cates Aff., ¶ 1). In addition to his affidavit, Mr. Cates provides time sheets that are sufficiently detailed to afford this Court a meaningful review of time spent. Although Mr. Cates seeks compensation for 140.9 hours, his time sheets add up to only 135.6 hours, and the request for fees will be reduced accordingly.

### d.  Hours Allocated For Glen Houston

Mr. Houston has submitted a two page Attorney Fees Affidavit (Ex. E to Mem. in Supp. of Pltf's Mot. for Attys' Fees, Docket No. 232).  He submitted no time sheets, nor does he anywhere state how many hours he spent working on this case.  Mr. Houston's only reference to time is his indication that he was retained by Plaintiff in December 1996, and that he continued to represent Plaintiff until he was allowed to withdraw by the Tenth Circuit Court of Appeals on August 27, 2002.  (Houston Aff., ¶ 1).  Mr. Houston's affidavit states that his attorney fees are billed at $250.00 per hour and that paralegal fees are billed at $80.00 per hour.  He then states that the combined attorney and paralegal fees amount to $77,372.00.  (*Id*. ¶¶ 2,3).  His affidavit contains no breakdown as to apportionment of attorney time versus paralegal time spent.

A basic premise of attorney fee applications is that "the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, [and] the nature and need for the  service . . . ."  *Hensley*, 461 U.S. at 441 (Burger, J., concurring).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Id*. at 433.

The fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  The applicant should exercise 'billing judgment' with respect to hours worked, . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Id*. at 437.  Mr. Houston has failed to meet his burden of establishing the number of hours he spent working on behalf of Plaintiff.  This is unfortunate, given the fact that he was Plaintiff's original attorney and was initially responsible for

pursuing this matter.  The inadequacy of his documentation would justify a denial of his entire fee request.

Although this Court has discretion to deny Mr. Houston's fee request altogether based upon inadequate documentation, it declines to do so for a number of reasons, similar to those reasons upheld by the Tenth Circuit in *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1234 (10th Cir. 2000).  First of all, Plaintiff prevailed on a serious claim of unlawful misconduct.  The law provides for the payment of his attorney fees as part of a comprehensive remedial scheme, and Plaintiff should not be denied the benefit of this law because Mr. Houston failed to do his part in recovering these fees from Defendants.  Second, Mr. Houston did  perform some valuable work in the earliest stages of this litigation.  Lastly, to deny Mr. Houston's fee application in full would provide an unwarranted windfall to Defendants.  The jury found that Defendants violated Plaintiff's Fourth Amendment rights, based upon an unlawful blood test.  It would be unjust to allow Defendants to evade the full measure of damages imposed by the law because Mr. Houston did not heed case law requiring meticulous and contemporaneous time records.

To avoid any possibility of redundancy with work performed by co-counsel, Mr. Cates, which has been properly documented , the Court will consider only the docket entries that indicate time that Mr. Houston spent on this case, either before or after Mr. Cates worked on it.  Prior to the entry of appearance of Mr. Cates, Mr. Houston composed and filed a four page complaint, served Defendants with service of process, filed a notice of refusal to consent before a magistrate judge, filed a motion for extension of time, filed a response to Defendants' motion to dismiss,  and attended a telephonic hearing before Magistrate Judge Smith.  The Court construes the termination of Mr.

Cates's work on this case as occurring in February of 2002[2].  Following this date, work performed on behalf of Plaintiff, that must have been performed by Mr. Houston, included a three page response to Defendants' motion to strike Plaintiff's exhibits (Docket No. 111), a three page response to Defendants' motion to strike Plaintiff's corrected memorandum (Docket No. 112), a twelve page reply concerning a motion to allow a second amendment to the complaint (Docket No. 115), a notice of completion of a motion packet (Docket 117),  and a notice of appeal (Docket No. 132).

### e.  Conclusion as to Reasonable Number of Hours Expended

Defendants' main objection on the issue of reasonableness of hours expended is that Plaintiff's counsel's hours are redundant.

Mr. Cates entered an appearance in this matter approximately five months after the complaint was filed.  Mr. Cates's hours are not redundant with those of Mr. Houston, who will be awarded no fees for the time period during which Mr. Cates worked on the case.  Despite the convoluted history of this case, it is clear that Mr. Cates's efforts contributed to the eventual success on the merits of the case, and that he should be compensated.  The Court has examined the amounts of total time reported by Mr. Cates, as well as the time allotted to specific tasks, and concludes that an award of 135.6 hours is reasonable.

The record before the Court supports the conclusion that a reasonable number of hours expended by Mr. Houston, before and after Mr. Cates worked on the case, is 50 hours.  The docket entries detailed above constitute the only evidence of work actually and necessarily performed by

---

[2]  The affidavit of Mr. Cates states that because he had obtained full-time employment elsewhere, that he was no longer permitted by his employer to work on this case, and that his decision to withdraw was approved in February 2002 (Cates Aff., ¶ 15).  The Court's docket contains an order granting his motion to withdraw, filed on April 23, 2002.

Mr. Houston. Because Mr. Houston has provided absolutely no information as to time he spent or actual tasks he performed, the Court's reliance on the docket entries and on Court's own knowledge as to time involved in accomplishing the tasks listed on the docket, are the only factual basis available to the Court. The Tenth Circuit has approved of a general reduction of hours claimed, in order to achieve what the court determines to be a reasonable number, so long as there is a sufficient reason for the court's methodology. *See generally Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986). The method employed herein is reasonable, it has an evidentiary basis, and is neither arbitrary nor capricious.

I have also carefully examined the amounts of total time as well as the time allotted to specific tasks in the time sheets submitted by Mr. Gorence and Ms. Oliveros. I conclude that these attorneys have exercised "billing judgment," which consists of winnowing the hours actually expended down to the hours reasonably expended. Mr. Gorence's time was spent familiarizing himself with the case, meeting with the client, conducting research, preparing for and attending hearings including a settlement conference, reviewing other litigation against the City of Hobbs, preparing documents for trial, other trial preparation, participation in the actual trial, preparation of this motion for attorney fees and a motion for costs. None of his reported time involved conducting formal discovery. Ms. Oliveros's time was spent familiarizing herself with the case, conducting research, preparing for and attending a mediation in Las Cruces, reviewing other litigation against the City of Hobbs, visitation of the scene of the incident in Hobbs, witness preparation and other trial preparation, preparation of pretrial motions and responses to motions, participation in the actual trial, research and work on post-trial motions.

Defendant's argument that the hours of Mr. Gorence and Ms. Oliveros duplicate work of Mr.

Houston is now largely inapplicable, given the Court's severe curtailment of Mr. Houston's fee request. To the extent that Mr. Gorence and Ms. Oliveros spent time familiarizing themselves with this case, and to the limited extent this is redundant with the work Mr. Cates or Mr. Houston performed as much as four years earlier, I conclude that such time spent was reasonable and justified. This decision is made, factoring in the withdrawals of Plaintiff's first two attorneys from the case. These withdrawals later necessitated the Gorence firm to "get up to speed" as quickly as possible, following remand by the Tenth Circuit from Mr. Marshall's *pro se* appeal, and to prepare for a trial date seven months later.

The Court has examined Defendants' other redundancy argument, *i.e.* that Mr. Gorence and Ms. Oliveros over-billed, in many instances describing the work as "review file" or "review", duplicating each other's work.

The Gorence law firm entered its appearance, following entry of summary judgment against Plaintiff by this Court, a partially successful appeal to the Tenth Circuit, and remand. As new attorneys to the case, given the extensive procedural history of the case, review of the file and of related cases was clearly necessary if Gorence and Oliveros were to adequately represent Plaintiff. The issue before the Court for purposes of this motion is how much review of this type is "reasonable."

In January and February 2004, Mr. Gorence reviewed the file, including depositions, on four separate occasions, and he later reviewed the files a couple of times in other litigation against some of these defendants. In January, February and March 2004, Ms. Oliveras reviewed the file on five different occasions and eventually reviewed files in other litigation five times, most of which were cases that had not been reviewed by Mr. Gorence. It appears that Ms. Oliveras was more heavily

11

involved in research and brief writing than was Mr. Gorence.

I conclude that their review of the case file and of related cases is not excessive, in light of the extensive procedural history of the case, at the time they entered their appearances. The complexity of this case warranted work by two attorneys, and their individual review of the case file, was necessary for them both to get "up to speed" and to become individually familiar with all aspects of Plaintiff's case. It would not have sufficed for only one of them to be familiar with the history and current stance of the litigation, which were facts that affected significant aspects of their work once they became involved in the case.

This relatively short time frame between entry of appearance by the Gorence firm and the trial date, combined with the fact that the defense frequently utilized more than one lawyer in brief preparation and at trial, are indications of the effort required and the reasonableness of the use of more than one attorney. *See Ramos*, 713 F.2d at 554. The Court has disallowed the vast majority of fees sought by Mr. Houston, for the reasons stated above. For all of these reasons, it is reasonable to require Defendants to bear the expense of the hours herein awarded to Plaintiff for the work of Mr. Houston, Mr. Cates, Mr. Gorence and Ms. Oliveras, despite some redundancy.

The Court notes that some time was unnecessarily spent by this Court, with hours submitted for compensation by Plaintiff's counsel, on issues relating to supervisory and municipal liability. The Court believes that this time was incurred, primarily due to some inexperience of Plaintiff's counsel, relating to the types of damages available against governmental entities. This was the topic of Phase II of the trial, which was preceded by a short Court conference with counsel, review of briefs submitted on the issues, and three hours of court time in the jury's presence on September 3, 2004. The Court directed the verdict against Plaintiff on these issues. The Court concludes that Plaintiff's

12

counsel's time spent on these issues was not reasonably expended.  Accordingly, 15.12 hours submitted by Mr. Gorence, and 12.28 hours submitted by Ms. Oliveros will be disallowed.  These deductions represent the hours that Plaintiff's counsel apparently spent in preparation for Phase II.

Consistent with these adjustments to the number of hours submitted, the Court will factor 50 hours for Mr. Houston, 135.60 hours for Mr. Cates, 218.35 hours for Mr. Gorence, and 123.52 hours for Ms. Oliveros into its lodestar analysis.[3]

### 2.  Reasonable Hourly Rate

### a.  Mr. Gorence

According to *Ramos*, it is up to this Court to establish a billing rate for each lawyer, from information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, based upon the norm for comparable private firm lawyers in this area.  In the first step of the process, the Court must determine what lawyers of comparable skill and experience practicing in the area in which litigation occurs would charge for their time. *Ramos*, 713 F.2d at 555.

The Court has examined Mr. Gorence's affidavit.  It states that he has been licensed to practice law in New Mexico since September 1983 and that he has practiced law continuously since that time (Gorence Aff., ¶ 3); that he served as an Assistant United States Attorney for 14 years,

---

[3]  The Court has accordingly taken into account in this part of its analysis the extent to which it believes that some inexperience on the part of Plaintiff's counsel lead to hours reported that were not reasonably expended.  This inexperience will not be double-counted, by considering it again later in the Court's analysis of whether an  upward or downward adjustment on this basis should be made to the lodestar amount.  *See Rupert ex rel. v. Sec. of Dept. of Health and Human Services*, 52 Fed.Cl. 684, 687 (Fed.Cl. 2002)("The primary concern of a reviewing court in any fee award decision must be whether the lower court double-counted any particular factor by considering it both in the determination of the lodestar and in the making of an upward or downward adjustment.")

including 6 years as the First Assistant  (*Id*., ¶ 4); that he has been in private practice since October 2000, practicing primarily in the areas of criminal defense, civil rights and personal injury work for plaintiffs (*Id*., ¶ 5); that although this was his first civil rights trial in federal court, that he has settled other such cases subsequent to discovery and dispositive motions (*Id*., ¶ 6); that his hourly rate was $225 in civil cases in 2002 and 2003, that it was increased to $250 in January 2004, and that it is his opinion that his current rate is well within the market range for attorneys of his skill and experience in the Albuquerque area (*Id*., ¶ 9).

The applicant bears the burden to show that the requested rates are reasonable, that is, they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Ellis v. University of Kansas Med. Ctr.,*  163 F.3d 1186, 1202-03 (10th Cir. 1998). "When determining the appropriate rate to apply to the reasonable hours, 'the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation.' "  *United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d 1219, 1234 (2000)(quoting *Case,* 157 F.3d at 1255).  "The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area."  *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987)(citation omitted).  "[A] district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grant[s]."  *Case*, 157 F.3d at 1255 (quotation marks and citation omitted).  The "court must award *rates* compatible with competent, trustworthy evidence of the  market."  *Id*. at 1256 (emphasis in original).

The court may not use its own knowledge to establish the appropriate hourly  rate unless the evidence of  prevailing market rates before the court is inadequate.  *Id*. at 1257; *see United*

*Phosphorus, Ltd., Inc*, 205 F.3d at 1234-1235(reversing trial court for awarding fees at hourly rates based upon its "own familiarity with the relevant rates in this community," improperly substituting its own knowledge for the evidence presented on prevailing market rates.)

Defendants submit arguments, but no affidavit or actual evidence on this issue. Plaintiff presented the only market evidence, his affidavit as well as that of a local attorney, Paul Kennedy. Mr. Kennedy's affidavit is an important piece of evidence, because something more than Mr. Gorence's affidavit is required to establish the prevailing market rate for attorney fees. *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). However, the affidavit must provide "[a]dequate proof from individuals familiar with the market of the community billing rate charged by attorneys of equivalent skill and experience performing services of similar complexity." *Raney v. Federal Bureau of Prisons*, 222 F.3d 927, 938 (Fed.Cir.2000).

Paul Kennedy's affidavit provides this type of adequate proof. Mr. Kennedy states that the rate of $250.00 per hour sought by Mr. Gorence is "equal to or lower than the rates charged by practitioners with similar degrees of experience in litigation in this area." (Kennedy Aff., ¶ 13). He states that Mr. Gorence is entitled to receive this hourly rate, based upon his training, experience, advocacy skills, and given the issues presented in this case. (*Id*., ¶ 12). Mr. Kennedy's affidavit is backed up by specific references to fees he has been awarded in fee-shifting cases in this district, ranging from an award of $200 per hour in 1992, to an award of $275 in November of 2003. (*Id*., ¶ 6). He states that his hourly rate in civil cases was $350 per hour from 2000 to December 2002, and that this rate increased to $450 per hour in 2003. (*Id*., ¶ 7). These details provide the pieces of evidence that enable this Court to make a reasonable determination of an appropriate hourly rate. *See National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325-26

(D.C.Cir.1982).

In addition, the Court has considered Mr. Gorence's affidavit. Mr. Gorence states that he is personally knowledgeable regarding the market for attorneys in the Albuquerque, and that $250 per hour is well within the market range for an attorney of his skill and experience. He states that this is a conservative rate, that it is reasonable given the contingent risk of a case such as this and in light of his particular expertise, and in light of hourly rates for lawyers of comparable skill and expertise handling similar types a federal litigation. (Gorence Aff., ¶¶ 9, 10).

Defendants object to paying Mr. Gorence $250.00 per hour because of the fact that this was his first civil rights trial, arguing that there is no difference between his level of experience in civil rights litigation and that of Ms. Oliveros. Based on this approach, Defendants argue that Mr. Gorence should also be compensated at the rate of $150.00 per hour. This argument overlooks the vast difference in trial experience generally, between that of Mr. Gorence, who has been a licensed attorney for 21 years, and that of Ms. Oliveros, who has been a licensed attorney for less than four years.

Plaintiff's two affidavits constitute competent, trustworthy evidence as to the market rates for attorneys fees for analogous litigation in Albuquerque before the United States District Court. It bears repeating that Defendants submitted no evidence on the hourly rate issue. Based on the only evidence before the Court, contained in the affidavits submitted by Plaintiff, the work of Mr. Gorence should be compensated at $250.00 per hour. While this rate is higher than some of the recent fee awards in this district, the Court finds it most appropriate in light of the strict Tenth Circuit guidance in *Case* to give priority to trustworthy and competent market evidence over its own knowledge of past awards.

16

## b.  Ms. Oliveros,  Mr. Cates and Mr. Houston

Defendants do not object to the hourly rate of $150.00 that Ms. Oliveros seeks.  In fact, Defendants state, "Ms. Louren Oliveros' fee is true to her experience."  (Defts' Resp. at 3.).  Further, they state that Oliveros "requests the reasonable rate for any attorney new to an area of law of $150 per hour." (*Id*. at 12).  Ms. Oliveros graduated from law school in May 2001, and has been with the Gorence firm since October 2001.  Defendants also make no objection to the $150.00 hourly rate that Mr. Cates seeks.  Mr. Cates has been a licensed attorney since 1989.  Given the lack of objection to these hourly rates and because the Court finds the rate to be reasonable, Ms. Oliveros and Mr. Cates shall be compensated at the hourly rate of $150.00.

According to his affidavit, Mr. Houston entered an appearance in this case for Plaintiff in l996.  Mr. Houston provides no evidence about his length or depth of experience as an attorney, other than this indication in the record  that he has been in practice since at least 1996.  Mr. Houston failed to provide evidence to the Court as to prevailing rates in the community for similar services by lawyers of comparable skill, evidence and reputation.  His affidavit merely states that his attorney fees were billed at $250 per hour.  Defendants argue that due to Mr. Houston's inadequate affidavit, he should be awarded no  fees.  They do not specifically take issue with his stated hourly rate of $250.  Mr. Houston has obviously been in practice longer than Ms. Oliveros, who seeks a rate of $150/hour, to which Defendants specifically agreed.  Mr. Houston will be awarded fees at this same hourly rate.

## c.  Michael Neil, Law Clerk

Services provided by non-lawyers, such as law clerks, may be compensated separately as part of the fee for legal services.  *Ramos*, 713 F.2d at 558-59.  "The court should scrutinize the reported

17

hours and the suggested rates in the same manner it scrutinizes lawyer time and rates."   *Id.*
Accordingly, fees for law clerks are determined by multiplying reasonable hours by reasonable rates
to reach a "lodestar" amount.

Defendants did not challenge the request for compensation for 21 hours of law clerk time,
at $75.00 per hour.  The Court has reviewed the amounts of total time as well as the time allotted to
specific tasks in the time sheets submitted by Mr. Neil, and concludes that these hours were
reasonably expended.  Given the lack of an objection from Defendants, and given the fact that
paralegal services have been compensated in this district at $75.00 per hour[4], the Court concludes that
this is a reasonable hourly rate for compensation for Mr. Neil.[5]

### 3.  Other Factors that Increase/Decrease Lodestar

"The product of reasonable hours times a reasonable rate does not end the inquiry.  There
remain other considerations that may lead the district court to adjust the fee upward or downward,
including the important factor of the 'results obtained.' "  *Hensley*, 461 U.S. at 434.  "Where a
plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.
Normally this will encompass all hours reasonably expended on the litigation, and indeed in some
cases of exceptional success an enhanced award may be justified."  *Id*. at 435.  "If, on the other
hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably

---

[4]  *See Hitson v. First Savings Bank*, No. CIV 01-966 LCS/KBM (Mem. Op. and Order, 1/10/03), at 5-6;
*Edwards v. Microsoft Corp.*, No. CIV 99-1476 SC/DJS (Mem. Op. and Order, 8/31/00), at 15.

[5]  Because neither party submitted any evidence of prevailing market rates for law clerks, the Court, in its
discretion, may use other relevant factors, including its own knowledge, to establish the rate.  *Case*, 157 F.3d at
1257.

expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id*.

Defendants seek to reduce the attorney fee award, arguing that Plaintiff achieved only partial or limited success. It is accurate that Plaintiff prevailed neither on his claims under the Equal Protection clause, nor on the supervisory or municipal liability claims. As above-noted, Plaintiff succeeded on his Fourth Amendment claim and the jury found liability and awarded substantial damages against both Defendants.

Defendants make the unsubstantiated argument that they "prevailed on eighty percent of the case." (Defts' Resp. at 6). Without any reference to the trial transcript to quantify such an argument, they argue that "at least eighty percent of Plaintiff's witness testimony and evidence were based on the race claim," and that this claim was ultimately rejected by the jury. (*Id*. at 5). Defendants contend that Plaintiff prevailed solely on the consent to search issue – "a comparatively minor issue at trial in terms of evidence, time and effort on the part of the Plaintiff." (*Id*. at 6).

The *Hensley* Court specifically clarified the proper relationship of the results obtained to an award of attorney's fees. That Court noted that in situations where a plaintiff succeeded on only some of his claims for relief, two questions must be asked: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Hensley, 461 U.S. at 435.

As to the first inquiry, this Court has previously noted that Plaintiff's Equal Protection and Fourth Amendment claims arose from an uninterrupted series of police actions, occurring on the

19

same day, and that these claims were related in terms of potential harm that resulted from each. (*See* Mem. Op. and Order at 5, Docket No. 271). These claims were based on related legal theories having to do with alleged deprivations of constitutional rights.  Much of Plaintiff's counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Even had Defendants supplied a factual basis for their contention that eighty percent of the trial focused on the Equal Protection violation, the trial itself was but a small portion of the time Plaintiff's counsel devoted to the litigation as a whole.  This lawsuit simply cannot be viewed as two discrete claims.  Plaintiff won substantial relief and  should not have his attorney's fee reduced simply because the Court and the jury did not award all claims that he made.  It would be unreasonable to exclude the hours spent on the Equal Protection claim, given that such a claim was not distinct in all, or many, respects from his successful claim.  The Tenth Circuit has held that arguments such as Defendants make here are "legally indefensible in light of the fact that all of the unsuccessful claims were intertwined with the successful claims through a common core of facts or related legal theories."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998).

Rather, as instructed by *Hensley*, this Court will focus on the significance of the overall relief obtained by Plaintiff in relation to the hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 435.  It is this Court's opinion that Plaintiff obtained excellent results.  The jury's verdict is significant, monetarily, it conveys an important message about an egregious violation of Plaintiff's constitutional rights (*See* Mem. Op. and Order at 14, Docket No. 271), and serves as a vindication of Plaintiff's protected civil rights -- a victory that served an important purpose. *See Gudenkauf v. Stauffer Communications, Inc*., 158 F.3d 1074, 1085 n.6 (10th Cir. 1998).

In its discussion that "the most critical factor is the degree of success obtained," the *Hensley*

Court stated that application of this principle is particularly important in complex civil rights litigation, such as those involving numerous challenges to institutional practices. *Hensley*, 461 U.S. at 436. Noting that this type of litigation is lengthy and demands many hours of lawyers' services, the Court stated that the range of possible success is vast. Certainly the result in this case qualifies as substantial overall relief.

In this case, exclusive of gross receipts tax, fees will be awarded in the amount of $102,530.50 for the work of four attorneys and a law clerk, in rates ranging from $75.00 per hour to $250.00 per hour, covering the lengthy history of this case since its inception in November 1999. The Court has disallowed most of Mr. Houston's fee request, and has never been asked to award fees for the *pro se* appeal. The fee awarded herein is approximately 17.6% the amount of the $580,000 verdict, an amount that is not excessive. Without factoring in the intangible value of the verdict vindicating Plaintiff's constitutional rights, the Court concludes that the relationship between this fee award and the extent of monetary success is a reasonable one. The level of success achieved by Plaintiff justifies the fees herein awarded, which the Court concludes were reasonably expended on this litigation.

### 4. Gross Receipts Taxes

Expenses not taxable in accordance with 28 U.S.C. § 1920 that are normally itemized and billed in addition to the hourly rate should be included in fee allowances if reasonable in amount. *Case*, 157 F.3d at 1257; *Ramos*, 713 F.2d at 559. New Mexico requires professionals to pay gross receipts tax on their earnings. Consequently, attorneys in New Mexico bill gross receipts tax to their clients. The gross receipts taxes on Plaintiff's counsel's fees will be awarded as part of the fee.

21

**WHEREFORE**, **IT IS HEREBY ORDERED:**

1. Clerk's Cost Award (Docket No. 267) shall stand as entered in the amount of $1,943.43.

2. Plaintiff's Motion for Attorney Fees (Docket No. 231) is **granted**, however the amount awarded differs from the amounts sought, as fully specified herein.  Defendants shall pay attorneys fees and gross receipts taxes, in the amount of $109,451.30.


**IT IS SO ORDERED.**

_____

**SENIOR UNITED STATES DISTRICT JUDGE**